TERRELL, Chief Justice.
In March, 1955, appellant Harry Frank Long, John Malcolm Courson, Clyde Marvin Salis and John Paul Smith were indicted for murder in the first degree in that on January 1, 1954, they did kill or murder Thomas Kimball Coleman, Sr., in Duval County. The indictment was in one count and charged Harry Frank Long as principal in the first degree, while John Mai com Courson, Clyde Marvin Salis and John Paul Smith were charged as being principals in the second degree. On motion of the state and the other three defendants severance was granted as to Harry Frank Long. Long was adjudged insolvent and council was appointed to represent him. A plea of not guilty was entered and the trial resulted in a verdict and judgment of murder in the first degree for which the death penalty was imposed and to which this appeal was prosecuted.
It is first contended that the trial court committed error in granting motion of the *898 state to dismiss appellant’s motion for new, trial.
It appears that the verdict was rendered May 28, 1955, the court granted appellant 15 days from date of the verdict within which to file his motion for new trial but it was not filed until June 13, 1955, one day after the expiration of the time allowed. Appellant contends that the last day happened to fall on Sunday and being so, since it was the custom to close the courthouse on Saturday and Sunday, the motion should have been properly filed on Monday, the day after the time allowed expired. Section 920.02, Florida Statutes, F.S.A., is the governing law and requires that motion for new 'trial be filed within four days or at such further time as the court may allow not to exceed 15 days after the verdict or the finding of the court. The trial court, relying on Farrior v. State, Fla., 76 So.2d 148, found that the time limit in the statute was absolute and being so the motion came too late and dismissed it. We adhere to the rule established by the Farrior case that the rules of civil procedure do not control in criminal cases, consequently there was no error.
The only other error assigned and argued goes to the sufficiency of the evidence to sustain the verdict of murder in the first degree.
Section 782.04, Florida Statutes, F.S.A., defines murder in the first degree as the unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed or any human being, or when committed in the perpetration of or in the attempt to perpetrate any arson, rape, robbery, burglary, the abominable and detestable crime against nature or kidnapping, and shall be punishable by death.
Summarizing the evidence as to conduct of appellant and his three companions on the night of the murder, the record shows that they -resided in or about Jacksonville, Florida; that they, traversed parts of the city on the evening of December 31, 1954, with robbery as their objective; the first place they robbed was a certain Shell filling station from which they secured $70 or $80; they proceeded on their way and late in the night came to the Texan Motel on U. S. Highway 1, north of Jacksonville. As they were passing said motel, appellant told the driver to pull in there and stop in front of the motel. As soon as the car stopped, he got out and.said that he would go in and get permission of the man in charge to use the restroom and that when he came out he would hold him up. He told his companions to stay in the car and keep the motor running. Appellant proceeded to the office of the motel, went to the restroom, soon came out when the shooting started between the appellant and the man in charge of the motel. Herschel C. Chesley had just driven up to the motel to secure a room and witnessed the shooting between appellant and Thomas Kimball Coleman, Sr., the owner of the motel. Chesley not only told of the shooting but said appellant left the motel after the shooting with pistol in hand and got in the automobile and left with his companions. Chesley also testified that he went in the motel immediately after appellant left, saw Coleman on the floor with several bullet holes in his shirt front and called the police.
On cross examination Chesley testified to the number of shots that were fired; that when appellant got in the car somebody said, “Let’s get away from here in a hurry.” He also testified that Coleman had no gun beside him when he was on the floor immediately after he was shot; he positively identified appellant as the man who left the motel after the shooting with a gun in his hand. His evidence also shows that appellant killed Coleman attempting to rob the motel.
Officer Russell E. Dowling, Deputy Sheriff, testified he and road patrol officer George Troeger arrived at the motel a few inmutes after the robbery, that Coleman was still alive when they arrived; that there were bullet holes in various parts of the *899 room, and that Chesley was still there. He testified further a .32 caliber Beretta automatic pisitol was found near the right side of Coleman which was delivered to Deputy Sheriff Roy Sands. The testimony of Sands showed that this pistol contained six unfired cartridges in the clip, which usually holds eight or nine. Donald Coleman, the son of the victim, testified this gun was his, that he gave it to his father that night because it had been a long time since his father had “closed up” and he [Donald] always had the pistol with him when he closed the office at late hours. From all the evidence there is little doubt that there was an exchange of shots between Coleman and appellant.
Dr. Lombardo, who performed the autopsy, testified that there were five bullet wounds in the body of Coleman, three of them being in the lower chest and abdomen, any one of the latter three being sufficient to cause death. The doctor recovered two bullets from the body, one from the hand, one from the chest cavity near the spine, which were delivered to Deputy Sands on January 5. Deputy Sands personally recovered a bullet from the left hip of Coleman soon after his body was delivered to the morgue the morning of the robbery. Sands testified that one of the bullets received from the doctor was quite battered and deformed, while the other was “considerably more whole.”
Clyde Marvin Salis, John Malcolm Cour-son and John Paul Smith, appellant’s accomplices in the crime, told of meeting with appellant early in the evening, that they planned the robberies and that they were out looking for places to rob; that all appellant secured at the Texan Motel was a roll of one-half silver dollars amounting in all to $10, which they divided between them. They also testified that when Long returned to the car from the shooting he asked for more bullets, that he wanted to return to the motel and get more money. Donald Coleman testified he had put a roll of half dollars in the cash drawer which was missing after the robbery.
Appellant was not apprehended that night but a patrolman from Pensacola testified that he arrested him as result of a police lookout broadcast on January 18, 19S4, and found a pistol and zipper bag in his [appellant’s] car. The pistol and zipper bag were turned over to Deputy Sheriff Sands of Duval County and the zipper bag was found to contain a Smith and Wesson Blue Steel, .32 revolver. Sands took the three ■bullets recovered from the victim’s body and the two guns to Marion E. Williams, Special Agent for the Federal Bureau of Investigation, at Washington, who testified that he had received and examined the bul-, lets and revolvers to determine whether or not the bullets had in fact come from appellant’s gun. He concluded positively that two of the bullets had in fact been fired from appellant’s .32 caliber Smith and Wesson revolver and so testified. The third bullet was so battered that his only positive conclusion was that it was also .32 caliber and fired from a gun having the same characteristics as appellant’s. All this adds up to the fact that the bullets found in the body of deceased had been fired from appellant’s gun. All three of appellant’s companions testified that the guns found in appellant’s possession by the Pensacola patrolman were the ones he had and used on the night of the robbery.
In fine, the evidence of Chesley, the eyewitness, shows (1) that appellant committed the murder and robbery; (2) that the three co-defendants were constructively present waiting for appellant on the outside of the motel and fled with him after the robbery and murder were perfected; (3) the testimony of the FBI agent, though circumstantial, was most convincing and when considered with other evidence makes out a conclusive case of murder in the first degree.
The appellant interposed the defense of intoxication and lapse of memory but it was not convincing and the jury did not elect to believe it. He contends that at best he was guilty of no more than murder *900 in the second degree. It is difficult to reconcile this 'contention with the record which shows conclusively that appellant planned with his confederates to rob, this being the second attempt that evening and both were successful. When read as a whole the evi-; dence is so conclusive that we have not attempted more than a brief review of it. There can be no doubt that appellant killed Coleman while attempting to rob his motel, that the robbery was deliberately planned and executed by appellant and his confederates.
We find no error so the judgment must be, and is hereby, affirmed.
Affirmed.
THOMAS, HOBSON, ROBERTS, THORNAL and O’CONNELL, JJ., and LOPEZ, Circuit Judge, concur.